ROBERT M. SUSSMAN, DC Bar No. 226746
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118

MICHAEL CONNETT, CA Bar No. 300314
WATERS KRAUS AND PAUL
222 North Pacific Coast Highway
Suite 1900
El l Segundo, California 90245
(310) 414-8146

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

| | |
|---|---|
| ASBESTOS DISEASE AWARENESS ORGANIZATION, AMERICAN PUBLIC HEALTH ASSOCIATION, CENTER FOR ENVIRONMENTAL HEALTH, ENVIRONMENTAL WORKING GROUP, and ENVIRONMENTAL HEALTH STRATEGY CENTER<br><br>                         Plaintiffs,<br>          vs.<br><br>ANDREW WHEELER, as Acting Administrator of the United States Environmental Protection Agency, and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY<br><br>.<br><br>                     Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

       Plaintiffs, Asbestos Disease Awareness Organization ("ADAO"), American Public Health Association ("APHA"), Center for Environmental Health ("CEH"), Environmental Working Group ("EWG"),  and Environmental Health Strategy Center ("EHSC") ("Plaintiffs"), as and for their Complaint, allege as follows against Defendants Andrew Wheeler, as Acting Administrator of the Environmental Protection Agency ("EPA"), and the EPA:

## INTRODUCTORY STATEMENT

1.  Plaintiffs are nonprofit public health and environmental organizations committed to addressing the serious risk of cancer and disease that asbestos continues to pose to the US population. Their suit seeks to compel defendants Acting Administrator Wheeler and EPA to initiate rulemaking under section 8(a) of the Toxic Substances Control Act ("TSCA") to require importers, manufacturers and processors of asbestos and asbestos-containing mixtures and articles to submit reports on the amounts of asbestos they import and use, the sites where these activities occur, the nature of the use and the resulting potential for exposure to asbestos by workers and members of the public. Plaintiffs petitioned EPA to undertake this rulemaking under section 21 of TSCA on September 25, 2018 and EPA denied their petition on December 21, 2018. The Court should now require EPA to propose an asbestos reporting rule under TSCA section 8(a) because (1) asbestos presents an unreasonable risk of injury to human health and thereby meets the standard for judicial intervention under section  21(b)(4)(ii), and (2) EPA's denial of the petition was arbitrary and capricious and contrary to law, thereby violating the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

## JURISDICTION AND VENUE

2.  This action is brought under section 21(b)(4)(A) of TSCA, 15 U.S.C. § 2620, which provides that, upon the denial of a petition under section 21(a),  the petitioner "may commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition." Such an action must be filed within 60 days of the denial of the petition.

3.  This action is also filed under section 706 of the APA, 5 U.S.C. § 706, under which a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

4.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §2620(b)4).

5.   This Court has the authority to grant the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and 15 U.S.C. §2620(b)(4).

6.   Venue is proper in the Northern District of California pursuant to 28 U. S.C. § 1391(e)(1)(C) and 15 U.S.C. §2620(b)(4) because plaintiffs EWG and CEH reside in the District.

**PARTIES**

7.   Founded in 2004, plaintiff ADAO, an independent 504(c)(3) non-profit organization, has spent over a decade working to prevent asbestos-caused diseases. ADAO works nationally and internationally with the leading scientists, medical doctors, industrial hygiene specialists, legislators and community advocates to protect public health and our environment. As a leader in education, ADAO hosts an annual international academic conference, now in its 14th year, to promote scientific advances in the treatment and cure of asbestos disease and advocate for the elimination of all asbestos exposures throughout the world.   ADAO has been involved in efforts related to TSCA reform and the passage of the Frank Lautenberg Chemical Safety for the Twenty First Century Act for over a decade. ADAO is based in Redondo Beach, California.

8.   Plaintiff APHA champions the health of all people and all communities, strengthens the profession of public health, shares the latest research and information, promotes best practices, and advocates for public health policies grounded in research. APHA represents over 20,000 individual members and is the only organization that combines a nearly 150-year perspective and a broad-based member community with an interest in improving the public's health.   APHA has long advocated for policies to protect the public from exposure to harmful chemicals and other hazardous substances, including asbestos. APHA is based in Washington DC.

9.   Plaintiff CEH is a non-profit organization working to protect children and families from harmful chemicals in air, food, water and in everyday products. Its vision and mission are a world where everyone lives, works, learns and plays in a healthy environment; we protect people from toxic chemicals by working

with communities, businesses, and the government to demand and support business practices that are safe for human health and the environment. CEH is headquartered in Oakland, California, with an East Coast office in New York City.

10.  Plaintiff EHSC has worked since 2002 to ensure that all families are healthy and thriving in a fair and healthy economy. EHSC advocates for safe food and water, toxic-free products, and good green jobs. In Maine and nationally, it runs effective issue campaigns and advocates science-based solutions that advance a bold vision with pragmatism.  EHSC has been involved in efforts related to TSCA reform and the passage of the Frank Lautenberg Chemical Safety for the Twenty First Century Act for over a decade. A coalition builder, the Strategy Center develops grassroots leaders and champions for environmental public health and sustainable economic development. EHSC is based in Portland, Maine.

11.  Plaintiff EWG is a 501(c)(3) non-profit, non-partisan organization that works to empower people to live healthier lives in a healthier environment. EWG achieves this by creating and sharing research reports and consumer guides that educate people about the products they use and chemicals they are exposed to. EWG also engages with policy-makers to advocate for the strengthening and enforcement of laws related to environmental health. EWG has been deeply involved in efforts to reform TSCA over the last decade. EWG has been actively involved in the implementation of the Frank Lautenberg Chemical Safety for the Twenty First Century, including the rules and actions related to asbestos. EWG also commented on EPA's problem formulation for the risk evaluation of asbestos and continues to educate consumers about the presence of asbestos in cosmetics. EWG has offices in Washington DC and San Francisco, CA.

12. Defendant Andrew Wheeler, named in his official capacity as Acting Administrator of EPA, has authority for the implementation of TSCA and is responsible for assuring that the Agency exercises its responsibilities under TSCA in compliance with the law.

13.  Defendant EPA is an agency of the United States Executive Branch and, under the direction of Acting Administrator Wheeler, is charged with implementing the provisions of TSCA, including by responding to rulemaking petitions under section 21.

## STATUTORY BACKGROUND

14.  TSCA was enacted in 1976 to create a national program for assessing and managing the risks of chemicals to human health and the environment. Among the goals stated in TSCA section 2(b), 15 U.S.C. §2601(b), are that: (1) "adequate information should be developed with respect to the effect of chemical substances and mixtures on health and the environment" and (2) "adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment."

15.  The need for this comprehensive framework for managing chemical risks was described as follows in the Senate Report on the original law:

> As the industry has grown, we have become literally surrounded by a man-made chemical environment. We utilize chemicals in a majority of our daily activities. We continually wear, wash with, inhale, and ingest a multitude of chemical substances. Many of these chemicals are essential to protect, prolong, and enhance our lives. Yet, too frequently, we have discovered that certain of these chemicals present lethal health and environmental dangers.

Senate Rept. No. 94-698, 94th Cong. 2d Sess. (1976) at 3.

16.  To protect against unsafe chemicals, section 6(a) of the law gives EPA authority to regulate those substances that present an "unreasonable risk of injury" to human health or the environment. Section 6(a) lists several phases of a chemical's life-cycle (manufacture, processing, use, disposal etc.) that EPA is authorized to regulate and the types of restrictions (prohibiting or limiting manufacture, use, disposal, etc.) that EPA can impose. Under TSCA section 6(a), "[i]f the [EPA] Administrator determines . . . that the . . . use . . . of a chemical substance . . . presents an unreasonable risk of injury to health or the environment, the Administrator shall by rule" impose one of more of these authorized restrictions. including banning the manufacture or distribution of the chemical for a particular use. 15 U.S.C. § 2605(a).

17.    Despite the high hopes of Congress for effective action under section 6, progress in regulating unsafe chemicals under the 1976 law was disappointing. A major setback involved EPA's unsuccessful efforts to protect against the dangers of asbestos. In 1989, the Agency issued a rule under section 6(a) of TSCA prohibiting manufacture, importation, processing or distribution in commerce of asbestos in almost all products based on a determination that they presented an "unreasonable risk of injury" under TSCA section 6.  However, the Fifth Circuit Court of Appeals overturned the ban in 1991 because EPA had failed to clear several difficult analytical hurdles in the law. *Corrosion Proof Fittings v. EPA*, 947 F.2d 1201 (5th Cir. 1991).

18.    Over time, the asbestos court decision became the poster child for the inability of TSCA to support meaningful action on unsafe chemicals. After a multi-year effort to overhaul and strengthen its key provisions, TSCA was amended by the Frank R. Lautenberg Chemical Safety for the 21st Century Act ("LCSA"), which took effect on June 11, 2016.

19.    These TSCA amendments enhance the chemical regulatory authorities in section 6 by establishing a new integrated process for (1) prioritizing chemicals, (2) conducting risk evaluations on high- priority chemicals and (3) promulgating rules under section 6(a) to eliminate unreasonable risks identified in risk evaluations. Congress set strict deadlines for each of these steps and directed EPA to address a minimum number of chemicals by these deadlines. It also removed the impediments to effective regulation created by the *Corrosion Proof Fittings* decision by eliminating any consideration of costs and other non-risk factors in determining whether chemicals present an unreasonable risk of injury and directing EPA to impose requirements "necessary so that the chemical no longer presents such [unreasonable] risk."

20.    TSCA section 8(a)(1) provides that EPA "shall promulgate rules" that require each person who manufactures or processes a chemical substance to submit such reports as the "Administrator may reasonably require." 15 U. S. C. § 2607(a). Because section 3(9) defines "manufacture" to include "importation," reports must be submitted by importers of chemical substances subject to these rules. The rulemaking authority under section 8 is a critical tool to collect the information on chemical use and

exposure necessary for informed and effective risk evaluation and risk management. Its importance has been magnified by the increased responsibilities and deadlines placed on the Agency by LCSA.

21.   Since TSCA's inception, section 21 of the law has contained a petition process by which citizens can seek to compel action by EPA under different provisions of the law.  15 U.S.C. § 2620.  The DC Circuit has recognized "TSCA's unusually powerful citizen-petition procedures." *Trumpeter Swan Society v EPA*, 774 F.3d 1037, 1939 (DC Cir. 2014).   As enacted in 1976, Section 21 authorizes citizens to petition for, *inter alia*, issuance of a rule under Section 8 requiring reporting by manufacturers and processors of chemical substance.  *Id.* § 2620(b)(4)(B).  EPA is required to respond to the petition within 90 days. If EPA denies the petition or fails to act within 90 days, Section 21 empowers the petitioner to file a civil action in federal district court to "compel the [EPA] Administrator to initiate a rulemaking proceeding as requested in the petition." 15 U.S.C. §2620(b)(4)(A).

22.   Under Section 21, "the petitioner shall be provided an opportunity to have such petition considered by the court in a *de novo* proceeding." 15 U.S.C. §2620(b)(4)(B).  As amended by LCSA, where the petition seeks promulgation of a rule under section 8, section 21(b)(4)(B)(ii) directs the district court to "order the Administrator to initiate the action requested  by the petitioner" if it "demonstrates to the satisfaction for the court by a preponderance of the evidence" that the chemical substance in question "presents an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors."

### THE DEADLY PROPERTIES OF ASBESTOS

23.   The International Agency for Research on Cancer ("IARC"),[1] the National Toxicology Program ("NTP"),[2] the Occupational Safety and Health Administration ("OSHA"),[3] the National Institute for

---

[1] "IARC Monographs—Arsenic, Metals, Fibres, and Dusts, Volume 100 C. A Reviews of Human Carcinogens," in "IARC Monographs on the Evaluation of Carcinogenic Risks to Humans. International Agency for Research on Cancer, World Health Organization.," International Agency for Research on Cancer2012, Available: http://monographs.iarc.fr/ENG/Monographs/vol100C/mono100C.pdf.
[2] National Toxicology Program (NTP). Asbestos. Report on Carcinogens, Fourteenth Edition. US DHHS, 2016.
[3] Occupational Safety and Health Administration (OSHA). Occupational exposure to asbestos. Final rule. 29 CFR Parts 1910,
Continued on the next page

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Occupational Safety and Health ("NIOSH"),[4] the World Health Organization ("WHO")[5] and a number of other regulatory and public health bodies recognized asbestos as a human carcinogen decades ago.

24.  In its most recent monograph on asbestos published in 2012, IARC found the following cancers in humans to be causally related to asbestos exposure: lung cancer, malignant mesothelioma, ovarian cancer, and cancer of the larynx.[6]  There is considerable evidence in the scientific literature of causal associations with gastro-intestinal cancers and kidney cancer.  Non-malignant diseases are also caused by asbestos. These include asbestosis and asbestos-related pleural thickening.[7]

25.  All fiber types in commercial use have been linked causally with each of these diseases and are regulated accordingly by OSHA and other government agencies.

26.  Despite the voluntary elimination of many asbestos products, the death toll from asbestos exposure remains high and is increasing. At the 14th Annual Asbestos Disease Awareness Conference in Washington D.C. last year, Dr. Jukka Takala DSc, MSc, BSC, President of the International Commission of Occupational Health ("ICOH"), reported a significant increase in previous estimates of asbestos-related deaths. According to Dr. Takala's recently published research, asbestos-related diseases cause 39,275 deaths in the United States annually - more than double the previous estimates of 15,000 per year.[8]

27.  A 2013 study by NIOSH of firefighters in three cities added evidence to the link between asbestos and malignant mesothelioma, finding that "[t]he population of firefighters in the study had a rate of mesothelioma two times greater than the rate in the U.S. population as a whole" and that "it was likely that

---

et al. Federal Register, August 10, 1994.
[4] National Institute for Occupational Safety and Health (NIOSH). Asbestos fibers and other elongate mineral particles: state of the science and roadmap for research. Current Intelligence Bulletin 62. US DHHS, 2011.
[5] WHO. International Agency for Research on Cancer (IARC) Monograph. Asbestos (chrysotile, amosite, crocidolite, tremolite, actinolite, and anthophyllite). Vol 100C, 2012.
[6] "Elimination of asbestos-related diseases," World Health Organization Geneva2014, Available: http://www.who.int/ipcs/assessment/public_health/Elimination_asbestosrelated_diseases_EN.pdf?ua=1.
[7] Dr. L. Christine Oliver, The Threat to Health Posed by Asbestos in the 21st Century in the United States, March 29, 2018, EPA-HQ-OPPT-2016-0736-0124
[8] S. Furuya, O. Chimed-Ochir, K. Takahashi, A. David, and J. Takala, "Global Asbestos Disaster," International Journal of Environmental Research and Public Health, vol. 15, no. 5, p. 15, 2018.

Continued on the next page

COMPLAINT

the[se] findings were associated with exposure to asbestos, a known cause of mesothelioma."[9]

28.  There is overwhelming consensus in the scientific community that there is no safe level of exposure to asbestos. Thus, as noted by the World Health Organization:

"Bearing in mind that there is no evidence for a threshold for the carcinogenic effect of asbestos, including chrysotile, and that increased cancer risks have been observed in populations exposed to very low levels, the most efficient way to eliminate asbestos-related diseases is to stop using all types of asbestos."[10]

## RECENT EPA ACTIONS ON ASBESTOS UNDER TSCA

29.  TSCA section 6(b)(2)(A) requires EPA to initiate risk evaluations on 10 chemical substances within 180 days of the enactment of LCSA.

30.  On December 19, 2016, EPA announced that asbestos would be one of the 10 chemicals selected for initial risk evaluations.

31.  EPA issued a scoping document in June 2017 and a problem formulation in June 2018 setting out the fiber types, products, exposure pathways and health end-points that it planned to address in its asbestos risk evaluation and summarizing the information in its possession on importation and use of asbestos and asbestos-containing products in the United States.

32.  In 2011, EPA promulgated the Chemical Data Reporting ("CDR") rule using its authority under TSCA section 8(a)(1). 40 C.F.R. Part 711. The rule was intended to support EPA's risk assessment and reduction efforts by providing basic information about the manufacturing, use and exposure profiles of chemicals in commerce. Under the rule, reporting is required for all chemicals manufactured or imported at a site in amounts of 25,000 pounds or more in a given reporting year.  For chemicals already regulated under certain TSCA provisions, the reporting threshold is set at 2,500 pounds per reporting year.

33.  Recognizing the importance of CDR reporting to EPA's asbestos risk evaluations,  in May of 2017, plaintiffs ADAO and EHSC notified EPA that Occidental Chemical Corporation, one of 3 US companies

---

[9] Daniels RD, Kubale TL, Yiin JH, *et al* Mortality and cancer incidence in a pooled cohort of US firefighters from San Francisco, Chicago and Philadelphia (1950–2009) *Occup Environ Med* 2014;**71:**388-397.
[10] "Chrysotile Asbestos," ed: World Health Organization, 2015.

who use "asbestos diaphragm cells" in the chlor-alkali process for manufacturing chlorine and other products such as caustic soda, had failed to report its asbestos imports (totaling several hundred tons) for the 2016 CDR update.

34.   In response to plaintiffs' notification, EPA advised Occidental in a letter dated July 28, 2017 that asbestos imports were not subject to reporting because, under 40 C.F.R, §711.6(a)(3), reporting is not required for "naturally occurring chemical substances."

### PLAINTIFFS' PETITION FOR RULEMAKING UNDER TSCA SECTION 21

35.   Plaintiffs' section 21 petition was filed on September 25, 2018 and requested that EPA initiate rulemaking under TSCA section 8(a)(1) to expand the CDR reporting requirements as applied to asbestos as follows:

(1)   eliminate the asbestos exemption in the current rule and designate asbestos as a reportable substance, thereby triggering requiring reporting on importation and use of asbestos in the US,

(2)   lower the reporting threshold, eliminate exemptions for impurities and articles, and require reporting by processors in order to assure that EPA has the information on asbestos use and exposure necessary for its TSCA risk evaluation,

(3)   require immediate submission of reports on asbestos for the 2016 reporting cycle, thereby maximizing EPA's ability to use the information reported to conduct the ongoing asbestos risk evaluation and the subsequent risk management rulemaking under TSCA section 6(a), and

(4)   determine that reports submitted on asbestos are not subject to protection as confidential business information (CBI), enabling the public to submit informed comments on the asbestos risk evaluation and assuring full public awareness of asbestos uses and exposure that present a significant risk to health

36.   To justify rulemaking to accomplish these goals, the petition emphasized that the asbestos loophole in the CDR rule "has resulted in a troubling – and wholly avoidable – lack of reliable information about who is importing asbestos and in what quantities, where and how asbestos is being used in the US, and who

is being exposed and how that exposure is occurring." Because of the lack of reporting, the petition maintained, "the public is not adequately informed about the risks that asbestos presents to health in the US, and EPA itself lacks the basic information required for a complete and informed risk evaluation that assures that unsafe asbestos uses are removed from commerce."

37.  To demonstrate why EPA needed enhanced reporting for its risk evaluation, the petition emphasized that, while EPA had identified several asbestos-containing products being imported into the US, "with limited exceptions, the problem formulation provides virtually no information about the quantities of asbestos contained in these products, the volumes in which they are produced or imported, the sites where they are used and the number of exposed individuals."

38.  The petition cited several examples of these data deficiencies, including the following:

"[T]he problem formulation indicates that EPA identified one company that imports asbestos-containing brake blocks for oil field use, but fails to quantify the amount of these imports or how and where they are used and acknowledges that '[i] is unclear how widespread the continued use of asbestos brake blocks is for use in oilfield equipment.'"

"Similarly, the problem formulation identifies a chemical manufacturer, Chemours, which uses imported sheet gaskets containing 80 percent asbestos but does not address how many other manufacturers use these gaskets, the aggregate amount of asbestos they contain, and the conditions of use that may result in release of and exposure to asbestos fibers.

"The problem formulation also cites USGS experts who, based on import records, believe that "asbestos-containing products that continue to be imported include . . . asbestos brake linings (automotive brakes/linings, other vehicle friction products), knitted fabrics (woven products), asbestos rubber sheets (i.e., sheet gaskets) and asbestos cement products." However, no information is provided on who is importing these products, what quantities are imported, where they are distributed and how they are used. As EPA acknowledges, '[i]t is important to note that the import volume of products containing asbestos is not known.'"

"EPA recognizes that consumer exposure could occur from 'changing asbestos-containing brakes or brake linings or cutting or using asbestos-containing woven products, and handling of asbestos waste that may result from these activities.' However, it then acknowledges that "'[c]onsumer exposures will be difficult to evaluate since the quantities of these products that still might be imported into the United States is not known.'"

To assure that this information is reported to EPA, the petition requested that EPA initiate rulemaking to eliminate the exemption of asbestos-containing "articles" from reporting and to expand reporting requirements to apply to "processors" of raw asbestos and asbestos-containing products.

39.    The petition also demonstrated that EPA lacked critical information about consumer products contaminated by asbestos. As it explained, "[t]he discovery of asbestos in Claire's makeup products – and previous detection of asbestos in certain crayons -- raises the possibility that thousands of asbestos-containing products may be imported in the U.S. for sale to consumers. However, no information about these products is provided in the problem formulation – presumably because EPA lacks reliable data on their importation and use."  The petition called for rulemaking to remove the reporting exemptions for "impurities" and "byproducts" so that reporting would be required for products containing low levels of asbestos as an unintended contaminant. As the petition emphasized, "EPA needs information about asbestos-contaminated consumer products to conduct a complete and protective risk evaluation."

40.    Finally, the petition requested that EPA initiate rulemaking that would provide for "making all reports submitted on asbestos publicly available notwithstanding any claims that these reports contain" Confidential Business Information (CBI). As the petition emphasized, "public [k]nowledge of which entities are importing and using asbestos, where and how these activities occur and the quantities of asbestos involved is critical to identifying exposed populations and pathways of exposure and taking steps to reduce risks."  The petition identified two provisions of TSCA section 14 authorizing EPA to limit CBI protections in the interests of transparency and public disclosure.

## EPA'S DENIAL OF PLAINTIFFS' PETITION

41.   EPA notified ADAO's counsel of its denial of the petition in a letter dated December 21, 2018, accompanied by a draft Federal Register notice.

42.   Among the grounds for rejecting the petition, EPA asserted that:

(1)    The asbestos loophole in the CDR rule only "applied under the specific circumstances described in the letter [to Occidental Chemcal]. EPA did not find that the exemption applied for all 'manufacturers or importers of asbestos or asbestos-containing products' as claimed by petitioners." (Petition Denial, at 17)

(2)   "EPA does not believe that the requested amendments would result in the reporting of any information that is not already known to EPA. . . .   After more than a year of research and stakeholder outreach, EPA believes that the Agency is aware of all ongoing uses of asbestos and already has the information that EPA would receive if EPA were to amend the CDR requirements"

(Petition Denial, at 13)

(3) "[A]mending the CDR rule would [not] be helpful in collecting additional import information on articles . . .  [EPA] has sufficient information on imported articles containing asbestos to conduct the risk evaluation." (Petition Denial at 19)

(3) "[E]ven if EPA believed that the requested amendments would collect information on any new ongoing uses, EPA would not be able to finalize such amendments in time to inform the ongoing risk evaluation or, if needed, any subsequent risk management decision(s) . . ." (Petition Denial at 13-14)

(4) With regard to the impurity exemption, the petitioners requested that these exemptions be made inapplicable to asbestos 'since the low levels of asbestos that have been found in makeup and crayons may be unintended contaminants that comprise byproducts and impurities' . . . [P]etitioners make no attempt to explain why they believe these findings are the result of the manufacture of asbestos as a byproduct or impurity . . . . Thus, it is unlikely that EPA would receive new information that would change its understanding of the conditions of use for asbestos that can be addressed under TSCA." (Petition Denial, at 22)

(5) "Petitioners' request [for disclosure of reported information containing CBI] is not appropriate for a TSCA section 21 petition.. . . EPA believes that disclosure of CBI would have no practical relevance to the risk evaluation or risk determination as the CBI claims are limited and EPA retains the ability to characterize the information without revealing the actual protected data." (Petition Denial at 25-26)

## PETITIONERS' REQUEST FOR RECONSIDERATION

43. On January 31, 2019, plaintiff ADAO wrote to defendant Wheeler requesting that EPA reconsider its December 21, 2018 petition denial and enclosing a point-by-point rebuttal to the Agency's grounds for the denial. Plaintiff ADAO requested that EPA consider the rebuttal when responding to a January 31, 2019 petition from the Attorney Generals of 14 states and the District of Columbia seeking the initiation of rulemaking to impose similar reporting requirements for asbestos under TSCA.

44. The rebuttal accompanying the January 31, 2019 request for reconsideration detailed EPA's limited knowledge of the identities, uses and exposure potential of imported asbestos-containing products and explained why, "[w]ithout comprehensive use and exposure information reported by the companies that import, handle and process asbestos and asbestos containing products, the EPA risk evaluation will necessarily fail to provide a complete and objective picture of the continuing health threat that asbestos poses to the public."  Among the key points in the rebuttal were that:

(a). EPA's efforts to avoid acknowledging the broad asbestos loophole in the CDR regulations are misleading and disingenuous.

(b). EPA has greatly overstated its knowledge of asbestos use and exposure in the United States. In fact, there are critical gaps in EPA's understanding and expanded CDR information is essential for a credible asbestos risk evaluation.

(c). Expeditious action by EPA would have enabled it to amend the CDR rule and obtain reports before completing the asbestos risk evaluation. Even after the evaluation is complete, CDR reporting would be valuable in TSCA section 6(a) rulemaking to restrict asbestos use and in informing the public about asbestos exposures.

(d). Unintended contamination of consumer products with asbestos is a serious, well-documented concern that EPA is ignoring. Eliminating the reporting exemption for impurities would enable EPA to identify and address asbestos-contaminated products that it is now sweeping under the rug.

(e).  Instead of recognizing the importance of informing the public about asbestos exposure and risk, EPA is hiding behind legalisms and avoiding the public interest in a transparent risk evaluation and risk management rulemaking.

## **FIRST CLAIM FOR RELIEF**

45.   Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46.   TSCA section 21 provides a right to judicial review in an appropriate district court within 60 days following denial of a petition to initiate rulemaking to require reporting under TSCA section 8.

47.   On September 25, 2018, Plaintiffs filed a petition under section 21 seeking rulemaking under section 8 to require reporting by importers, manufacturers and processors or raw asbestos and asbestos-containing articles and EPA denied that petition on December 21, 2018.

48.   Following the denial of a petition seeking the initiation of rulemaking under TSCA section 21, "the petitioner shall be provided an opportunity to have such petition considered by the court in a de novo proceeding." 15 U.S.C. §2620(b)(4)(B).

49.   Section 21(b)(4)(B)(ii) provides that, where the petition seeks promulgation of a rule under section 8, the district court shall "order the Administrator to initiate the action requested  by the petitioner" if it "demonstrates to the satisfaction of the court by a preponderance of the evidence" that the chemical substance in question "presents an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors."

50.   The preponderance of the evidence demonstrates that asbestos "presents an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors."

51.   The Court should order EPA to initiate rulemaking under section 8 of TSCA to require the asbestos reporting requirements requested in plaintiffs' petition.

## SECOND CLAIM FOR RELIEF

52.   Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

53.   Under section 706 of the APA, 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

54.   Defendants' December 24, 2018 denial of Plaintiffs' petition contains errors of law and fact, misrepresents the basis for the petition and ignores information in the docket and EPA's own past statements.

55.   The petition denial should be declared unlawful and be set aside under the APA.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants upon their claims and, further, request that this Honorable Court enter judgment against defendants:

(1) Declaring that Plaintiffs have demonstrated by a preponderance of the evidence that the manufacture, importation, processing and use of asbestos and asbestos-containing products present an unreasonable risk of injury to health and the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation, pursuant to 15 U.S.C. § 2620(b)(4)(B)(ii);

(2) Declaring that Defendants' denial of Plaintiffs' petition was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under 5 U.S.C. § 706;

(3) Order Defendants to initiate rulemaking to promulgate TSCA section 8 reporting requirements for asbestos as requested in Plaintiffs' petition pursuant to 15 U.S.C. §

2620(b)(4)(B);

(4) Award Plaintiffs their costs of suit and reasonable fees for attorneys and expert witnesses in this action pursuant to 15 U.S.C. § 2620(b)(4)(C); and

(5) Grant Plaintiffs such further and additional relief as the Court may deem just and proper.


Respectfully submitted this 18th day of February 2019.

/s/ Michael Connett
MICHAEL CONNETT, CA Bar No. 300314
WATERS KRAUS AND PAUL
222 North Pacific Coast Highway
Suite 1900
El l Segundo, California 90245
(310) 414-8146

Attorney for Plaintiffs