DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Tel.     (202) 514-2640
debra.carfora@usdoj.gov
john.do@usdoj.gov
brandon.adkins@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| ASBESTOS DISEASE AWARENESS ORGANIZATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Environmental Protection Agency, et al.,<br><br>Defendants. | Case No.: 19-cv-00871-EMC<br><br>**COURT-ORDERED SUPPLEMENTAL BRIEFING (ECF NO. 40)** |


# INTRODUCTION

Section 21(b)(4), 15 U.S.C. § 2620, of the Toxic Substances Control Act ("TSCA") provides Plaintiffs a remedy where EPA has denied their citizens' petition filed under section 21(a) to amend, repeal, or issue a rule under section 8, 15 U.S.C. § 2607. Section 21(b)(4) sets forth separate procedures for judicial review of petition denials, depending on whether the petition seeks the *issuance of a new rule* or the *amendment or repeal of an existing rule*. Here, it cannot reasonably be disputed that Plaintiffs seek judicial review of EPA's denial of their petition to initiate a rulemaking under section 8(a) of TSCA, 15 U.S.C. § 2607(a), to *amend* the existing TSCA Chemical Data Reporting ("CDR") rule, 40 C.F.R. Part 711. The applicable procedures for review of EPA's denial and the available remedy are provided for in subsection (A). The procedures and remedy available under subsection (A) provide Plaintiffs with an "adequate remedy in a court" that precludes review under the Administrative Procedure Act ("APA"). 5 U.S.C. § 704. In any event, the Court's finding of jurisdiction under subsection (A), rather than subsection (B), has no significance to EPA's pending partial motion to dismiss (ECF No. 16).

# ARGUMENT

**I.     Plaintiffs' Petition is Governed by Section 21(b)(4)(A) Because it Seeks Amendment to the Existing CDR Rule.**

As recognized by the Court, ECF No. 40, section 21(b)(4) provides for different judicial review of EPA's denial of section 21(a) petitions depending on whether the underlying petition seeks to initiate a proceeding for the issuance of a new rule or the amendment of an existing rule. 15 U.S.C. §2620(b)(4)(A)-(B).[1] In addition to Plaintiffs expressly seeking to "amend" the CDR

---

[1] Subsections (A) and (B) are distinct, and "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Sebelius v. Cloer*, 569 U.S. 369, 378 (2013); *see Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015). Subsection (B) provides for a "de novo proceeding" whereby the "the court shall order the Administrator to initiate the action requested by the petitioner" upon a showing "by preponderance of the evidence" that a chemical "presents an unreasonable risk," 15 U.S.C. §

rule in their petition, the requested rulemaking strikes at the direct purpose and substance of the existing CDR rule. Further, application of the standards available under section 21(b)(4)(B) here would not serve Congress' purpose and intent in providing for broader review of petitions seeking a new rule unrelated to an existing regulation.

### A. The petition seeks an amendment to an existing rule, both on its face and in substance.

On September 25, 2018, Plaintiffs submitted a petition expressly seeking initiation of a rulemaking under section 8(a) of TSCA, 15 U.S.C. § 2607, "to *amend* the TSCA Chemical Data Reporting (CDR) rule, 40 C.F.R. Part 711." Petition 1 (emphasis added).[2] On its face, the petition demonstrates that Plaintiffs were seeking an amendment to the CDR rule. Express language referencing the requested amendment appears on pages 2, 10, 11, and 12 of the petition. Indeed, Plaintiffs use the word "amend" at least three times and propose specific rewording of the CDR regulatory text on page 10.

Importantly, the petition also seeks an amendment in substance. Promulgated under section 8(a), the CDR rule at 40 C.F.R. Part 711 is the largest TSCA data-collection rule in terms of the number of entities subject to reporting and the list of chemicals covered. The existing CDR rule applies to asbestos and all substances in the TSCA inventory. 40 C.F.R. § 711.5. The CDR rule generally requires domestic manufacturers and importers to report information regarding the production and use of the chemical substances they manufactured or imported above specified thresholds. EPA uses the information collected by the CDR rule to evaluate chemicals under other provisions of TSCA, including section 6 risk evaluations.

With the CDR rule, EPA necessarily considered what specific reporting requirements should apply to asbestos and other TSCA inventory chemicals and elected to provide certain

---

2620(b)(4)(B). Subsection (A) tellingly lacks such language and the Court should not infer it. 15 U.S.C. § 2620(b)(4)(A).

[2]   A copy of Plaintiffs' petition is attached as Exhibit A. The petition is incorporated into Plaintiffs' complaint. The Court may review evidence outside the pleadings when determining its subject-matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

exemptions. As applied to asbestos, the CDR rule exempts from the reporting requirement certain imported raw asbestos as a naturally occurring substance, 40 C.F.R. § 711.6(a)(3), as a byproduct or impurity, 40 C.F.R. § 711.10(c), and as a chemical substance imported as part of an article, 40 C.F.R. § 711.8. In seeking to justify the requested rulemaking, both Plaintiffs' petition and complaint emphasize the purported need to amend the CDR rule to obtain additional information about "who is importing asbestos and in what quantities, where and how asbestos is being used in the United States, and who is being exposed and how that exposure is occurring." Petition 2; Am. Compl. ¶ 37, ECF No. 5. Plaintiffs contend that EPA lacks reliable data on the importation of asbestos-containing products, therefore requiring the need for enhanced reporting to conduct an adequate risk evaluation. Petition 2; Am. Compl. ¶¶ 38–40. Thus, the amendment requested in the petition goes to the stated purpose and substance of the CDR rule. Further, the petition requested that EPA expand the CDR reporting requirements as applied to asbestos in a manner that subjects asbestos to additional reporting. Am. Compl. ¶ 36. With the petition expressly and substantively seeking an amendment to the CDR rule, EPA treated the request as such. *See, e.g.*, *id.* ¶ 43 ("EPA does not believe that the *requested amendments* would result in the reporting of any information that is not already known to EPA." (emphasis added)). So too, the Court should treat the petition as seeking an amendment to the CDR rule and, therefore, subject EPA's denial of the petition to review only under section 21(b)(4)(A).

### B. Treating the petition as a request for an amendment is consistent with the text of TSCA section 21 and congressional intent.

In providing for limited review in subsection (A), Congress recognized in the Conference Report that for review of petitions seeking the amendment of an existing rule, "[t]he Administrator already will have addressed the general subject matter in an existing rule or order and the Administrator's determination will have been subject to section 19 of this Act." Legislative History of the Toxic Substances Control Act 711 (Comm. Print 1976), Exhibit B [Legislative History]. By contrast, in *Food & Water Watch, Inc. v. EPA*, 302 F. Supp. 3d 1058 (N.D. Cal. 2018), a different TSCA section 21 action, this Court found that TSCA provides a broader scope of review where a petitioner seeks judicial review of EPA's denial of a petition

seeking a new rule.  In that case, the Court recognized that "[t]he statute does not explicitly provide for a scope of review." *Id.* at 1062.  The Court looked to the Senate Report, which states that for judicial review of petitions seeking the issuance of a new rule under subsection (B), "there would be no record upon which the review could be based, and therefore a *de novo* procedure is essential to provide the opportunity to *develop* such a record." *Id.* at 1067 (quoting Legislative History 168–69); *see also Envtl. Def. Fund v. Reilly*, 909 F.2d 1497, 1503 (D.C. Cir. 1990) (explaining why section 21 provides different standards for review of petitions seeking a new rule).  Here, the Agency has already addressed the "general subject matter" of Plaintiffs' petition, and there is an adequate administrative record available for judicial review.  Additionally, *de novo* review here would amount to contemporaneous risk evaluations that could produce wholly inconsistent determinations and lead to a jurisdictional clash in the United States courts of appeal.

       1.    <u>There is a wealth of relevant materials which EPA has reviewed on this same general subject matter from which EPA can compile and certify an administrative record for judicial review.</u>

On December 19, 2016, pursuant to the Frank R. Lautenberg Chemical Safety for the 21st Century Act, amending TSCA, EPA identified asbestos as one of the initial ten TSCA chemical substances to undergo risk evaluation under conditions of use identified by the Administrator.  81 Fed. Reg. 91,927.  That evaluation is ongoing.  Here, EPA compiled material in responding to Plaintiffs' petition, culminating in its denial of their petition on December 21, 2018.  *See* 84 Fed. Reg. 3396–01 (Feb. 12, 2019). Given Plaintiffs' contention in the petition that EPA lacks reliable data to conduct an adequate risk evaluation, the public docket for Plaintiffs' petition includes references to the asbestos risk evaluation docket—EPA-HQ-OPPT-2016-0736, https://www.regulations.gov/docket?D=EPA-HQ-OPPT-2016-0736; *see also* 84 Fed. Reg. 3396–01, 3403 [Petition Response] (Feb. 12, 2019) (explaining that the public docket for Plaintiffs' petition includes all of the documents and other information considered by EPA in

denying the petition, "including documents that are referenced within the documents that are included in the docket, even if the referenced document is not physically located in the docket").[3]

The risk evaluation docket includes the scope document, which includes the hazards, exposures, conditions of use, and the potentially exposed or susceptible subpopulations the EPA expects to consider in its risk evaluation of asbestos conducted pursuant to TSCA section 6(b)(4). *Scope of the Risk Evaluation for Asbestos* [Scope Document] 22-25, https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/asbestos-scope-document-and-supplemental-files. The Problem Formulation for Asbestos Risk Evaluation under Amended TSCA, 83 Fed. Reg. 26,998 (June 11, 2018), refines the scope of the asbestos risk evaluation by clarifying the chemical uses that EPA expects to evaluate and describing how EPA expects to conduct the evaluation. Indeed, the Complaint asserts that the problem formulation demonstrates why EPA needs to enhance reporting to inform the asbestos risk evaluation. Am. Compl. ¶ 39. In explaining its reasons for denying the petition, EPA cited the problem formulation, among other documents, to explain how it identified the conditions of use for the asbestos risk evaluation. *See* Petition Response 3398. Both the Problem Formulation and the Scope Document, setting forth EPA's extensive research and outreach for identifying conditions of use,[4] were subject to public notice and comment. Thus, the risk evaluation docket provides an extensive source, specific to asbestos, that EPA considered and from which EPA could certify a record and upon which review in this matter should be based.

---

[3]   *See* Petition Response at 3403 (listing all of the documents specifically referenced in the petition response).

[4]   EPA reviewed published literature and online databases, including the most recent data available from the CDR rule, Safety Data Sheets, the United States Geological Survey's Mineral Commodities Summary and Minerals Yearbook, the U.S. International Trade Commission's Dataweb, and government and commercial trade databases. Scope Document; Petition Response 3398. EPA also reviewed the websites of potential manufacturers, importers, distributors, retailers, or other users of asbestos. Scope Document; Petition Response at 3398. Additionally, EPA convened meetings with companies, industry groups, chemical users, and other stakeholders to aid in identifying conditions of use and verifying conditions of use identified by EPA. Scope Document; Petition Response at 3398.

Additionally, regulations to amend and update the CDR rule were issued in 1986, 2003, 2005, and 2011 concerning the range of chemicals and plant sites reporting, the type of data reported, the production volume reporting threshold, and other adjustments. Thus, each of these rulemaking dockets could provide a source from which EPA could certify a record upon which review in this matter should be based.

Because EPA has already addressed the general subject matter of Plaintiffs' petition and there is an adequate administrative record available, judicial review of the denial under TSCA section 21(b)(4)(B) would not serve Congress' purpose for providing separate procedures. *See Envtl. Def. Fund*, 909 F.2d at 1503.

### 2. Contemporaneous risk evaluations could produce inconsistent risk determinations.

Further, treating Plaintiffs' underlying petition as seeking the issuance of a *new* rule rather than an amendment to the CDR rule, could interfere with EPA's ongoing risk evaluation of asbestos and TSCA's design for judicial review of such determinations. That is, to be successful on a claim under subsection (B), Plaintiffs must demonstrate "by a preponderance of the evidence" that asbestos presents an "unreasonable risk of injury." 15 U.S.C. § 2620(b)(4)(B)(ii). TSCA section 6(b) sets forth a scheme that prescribes the legal requirements for determining whether a substance poses an "unreasonable risk" under the conditions of use, as determined by the Administrator. Congress intended that the phrase unreasonable risk "be read in the context of the changes to section 6, including the functions and purposes delineated in subsections (a), (b), and (c)." H.R. Rep. No. 114-176, at 28 (2015). So, in determining whether asbestos creates an "unreasonable risk" as prescribed in section 21(b)(4)(B)(ii), the Court must apply the risk evaluation principles set forth in section 6(b). *United States v. Smith*, 683 F.2d 1236, 1240 (9th Cir. 1982) ("It is proper, and indeed essential, to interpret the words of a statute in the light of the purposes Congress was seeking to serve."); *see also In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1055 (9th Cir. 2001) (interpreting a statutory provision "in the light of the purposes that Congress was seeking to serve").

EPA's own risk evaluation of asbestos under section 6(b) is ongoing. Thus, concurrent review under section 21 would place the Court in the unusual position of making a risk determination, under the standards for evaluating risk set forth in section 6, simultaneous with EPA's risk evaluation under the same standard. Such simultaneous review is inappropriate for three reasons. First, contemporaneous risk evaluations could produce inconsistent risk determinations between EPA and the Court. Second, such inconsistent risk determinations could lead to a jurisdictional clash between district-court authority over the section 21 claim, and Courts of Appeals authority over potential challenges to EPA's ultimate risk determination or, if necessary, risk management rule.

For example, a determination by EPA that asbestos is not likely to present an unreasonable risk is considered final agency action, 15 U.S.C. § 2605(i)(1), over which the circuit courts of appeal have exclusive jurisdiction using the APA's arbitrary and capricious standard of review, 15 U.S.C. § 2618(a)(1)(A). In contrast, a district court would determine unreasonable risk under the *de novo* standard. Congress could not have intended a situation in which EPA and this Court would be making simultaneous risk determinations pursuant to section 6. *See* 162 Cong. Rec. S3521, S3522 (June 7, 2016) (explaining its intent in the context of temporary pre-emption to "ensure a uniform and consistent federal approach to risk evaluation and risk management").

Third, Plaintiffs' allegations in the Complaint, that "EPA itself lacks the basic information required for a complete and informed risk evaluation," Am. Compl. ¶ 37, are premature. And, in any event, such allegations are to be considered in a court of appeals upon EPA taking final agency action under section 6(i).[5]

In sum, review of EPA's denial of the underlying petition under subsection (B) would not serve Congress' purpose for providing separate procedures and standards depending on the

---

[5]    A determination by EPA that asbestos does present an unreasonable risk under the conditions of use is considered final agency action upon the date of promulgation of the risk management rule. 15 U.S.C. § 2605(i)(2). The courts of appeal have exclusive jurisdiction for judicial review of final risk management rules. 15 U.S.C. § 2618(a)(1)(B).

nature of the petition, while also interfering with the statutory scheme governing risk determinations and judicial review of challenges to those determinations.  Thus, this matter can be appropriately considered only under section 21(b)(4)(A).

II.    **A Finding That the Petition Sought An Amendment Carries No Significance to the Pending Partial Motion to Dismiss Because Both Subsections (A) and (B) Provide an Adequate Alternative Remedy to APA Review.**

The APA provides for district court review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  Where Congress has provided "special and adequate review procedures," the APA does not supply additional remedies. *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *see* Reply 1–3, ECF No. 28.  Although TSCA section 21 frames separate review procedures for distinct claims, both provisions provide "special and adequate procedures," thereby precluding jurisdiction over Plaintiffs' APA claim. *Bowen*, 487 U.S. at 903; *see, e.g.*, *Walker v. U.S. E.P.A.*, 802 F. Supp. 1568, 1573 (S.D. Tex. 1992) (finding jurisdiction under TSCA section 21(b)(4) to review EPA's denial of petitions requesting either the issuance of a new rule or the amendment or repeal of an existing rule).

The legislative history demonstrates that subsection (A) was intended to ensure that EPA would take final judicially reviewable action on petitions to amend or repeal an existing rule, and that challenges to the denial of those petitions should be subject to the more general standard of review of final agency action established by the APA.  Legislative History 711–12.  Congress' intent is served by the well-established rule of applying the standards in section 706 of the APA where the authorizing statute does not itself provide the standard. *Ellis v. Housenger*, 252 F. Supp. 3d 800, 808 (N.D. Cal. 2017) (citing *Oregon Nat. Res. Council v. Allen*, 476 F.3d 1031, 1036 (9th Cir. 2007)); *see also Walker*, 802 F. Supp. at 1574 (explaining that because "TSCA § 21 provides no description of the type of review available to denials of petitions to amend or repeal existing rules," the available review is prescribed by section 706 of the APA).  Applying

Case No. 19-cv-00871-EMC
Court-Ordered Supplemental Briefing (ECF No. 40)

the APA's general standard of review,[6] the Court shall "hold unlawful and *set aside agency action*, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A) (emphasis added). If Congress also intended that EPA be required to initiate a rulemaking proceeding upon a showing that the agency action was arbitrary and capricious, it would have said so. *Compare* 15 U.S.C. § 2620(b)(4)(A) with (B)(ii); *see also Sebelius*, 569 U.S. at 378 ("Congress acts intentionally and purposely in the disparate inclusion or exclusion" of particular language.). Thus, if Plaintiffs can meet their burden under TSCA section 21(b)(4)(A), the appropriate remedy is for the Court to remand the matter back to the agency for reconsideration consistent with the Court's opinion. In these ways, subsection (A) provides for the exact same remedy, scope, and standard of review as the APA.[7]

In contrast, subsection (B) provides for judicial review of an EPA petition denial in a *de novo* proceeding. 15 U.S.C. § 2620(b)(4)(B). The Committee noted that, in a subsection (B) proceeding, "[i]f a citizen can show *by a preponderance of the evidence* that the action requested in a citizen's petition conforms to the applicable requirements, then EPA should be required to initiate the action." Legislative History 168 (emphasis added). Congress clearly specified the applicable standard of review and remedy in subsection (B)(ii), authorizing the Court to "order the Administrator to initiate the action requested" if the Court finds by a preponderance of the evidence that asbestos presents an unreasonable risk of injury to health, under the conditions of

---

[6] The applicable standards of review and remedy are provided for in 5 U.S.C. § 706(2) because Plaintiffs seek review of EPA's petition denial—the reviewable final agency action under subsection 21(b)(4)(A).

[7] Plaintiffs concede that subsection (A) is silent on the standard of review, scope, and remedy. (ECF No. 38, at 4). They suggest, however, that the Court adopt the remedy of compelling EPA to initiate the desired rulemaking, perhaps after a "modified APA proceeding." Thus, even Plaintiffs seemingly concede that they are not entitled to a *de novo* proceeding. Further, Plaintiffs assert that only review "equivalent in scope and operation" to the APA would be an adequate remedy precluding an APA claim. Opp'n 14–18, ECF No. 26. Even if Plaintiffs were correct, subsection (A) provides relief equivalent in scope and operation as that of the APA.

use.[8] 15 U.S.C. § 2620(b)(4)(B)(ii). Thus, subsection (B) provides special and adequate review procedures, while also providing a distinct remedy for citizens that can satisfy their burden under that subsection.

In any event, the purpose and structure of subsections (A) and (B) satisfy the Supreme Court's analysis and application of the "adequate alternative remedy" test provided for in section 704 of the APA. The Supreme Court explained that section 704 of the APA "makes it clear that Congress did not intend" the general grant of jurisdiction provided for in the APA to "provide additional judicial remedies" where Congress "established special statutory procedures relating to specific [agency actions]." *Bowen*, 487 U.S. at 903. In *Bowen*, the Court held that the suggested alternative remedy in a different forum was not adequate because jurisdiction in the alternate forum was "doubtful" and "limited" in its ability to provide the relief necessary to remedy the harm. *See Bowen*, 487 U.S. at 901–05. Here, TSCA section 21(b)(4) provides a forum for adjudication in the district court, a limited class of potential plaintiffs, a statute of limitations, and authorization for at least as much relief as that available under the APA. 15 U.S.C. § 2620(b)(4). The differences in review and remedy provided for in subsections (A) and (B) are of no consequence to EPA's partial motion to dismiss because both subsections provide an adequate alternative remedy to the more general remedy provided for by the APA, barring an additional cause of action under the APA.

## CONCLUSION

For the above reasons, and those stated in EPA's opening and reply briefs, the Court should grant EPA's partial motion to dismiss Plaintiffs' second claim for relief.

---

[8] Section 21(a) permits citizens to petition EPA to *initiate* a rulemaking. 15 U.S.C. § 2620(a). This language was included in the statute as the Committee substituted to the Senate Bill, which permitted citizens to petition EPA to *issue* a rule. Legislative History 710–11. Under the compromise language, the Committee notes that: "[T]he court can only require EPA to *initiate* an action. The court would not be allowed in this situation to determine the content of a rule or the outcome of such a proceeding." Legislative History 168 (emphasis added).

Respectfully submitted this 27th day of September, 2019.

*/s/ Debra J. Carfora*
DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Brandon N. Adkins, hereby certify that a true and correct copy of the foregoing Court-Ordered Supplemental Briefing (ECF No. 40) was served by Notice of Electronic Filing this 27th day of September, 2019, upon all ECF-registered counsel of record using the Court's CM/ECF system.

                                         */s/ Brandon N. Adkins*
                                         Brandon N. Adkins
                                         United States Department of Justice