UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASBESTOS DISEASE AWARENESS ORGANIZATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW WHEELER, et al., <br><br> Defendants. | Case No. 19-cv-00871-EMC <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> Docket No. 16 |

Plaintiffs[1] are a group of nonprofit public health and environmental organizations that promote awareness of the risks associated with asbestos in our environment. This suit against the Environmental Protection Agency ("EPA") and its Acting Administrator, Andrew Wheeler, challenges the EPA's denial of their petition to initiate rulemaking. Docket No. 1. This action is brought under the Toxic Substance Control Act ("TSCA") which provides under some circumstances *de novo* review of the EPA decision. The suit also asserts a claim under the Administrative Procedure Act ("APA"). Pending before the Court is the EPA's motion to dismiss the FAC's APA claim for lack of subject matter jurisdiction. The EPA's motion initially did not challenge Plaintiffs' TSCA claim, although the scope of the claim is now at issue.

## I. BACKGROUND

A. Statutory Background

Congress enacted the TSCA in 1976 to create a national program for assessing and

---

[1] Asbestos Disease Awareness Organization ("ADAO"), American Public Health Association ("APHA"), Center for Environmental Health ("CEH"), Environmental Working Group ("EWG"), Environmental Health Strategy Center ("EHSC"), and Safer Chemicals Healthy Families ("SCHF") (collectively, "Plaintiffs). FAC at 1.

managing the risks of chemicals to human health and the environment. Section 2(b)[2] of the TSCA requires the following from the EPA: (1) "adequate information should be developed with respect to the effect of chemical substances and mixtures on health and the environment" and (2) "adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2601(b)(1)–(2). However, "authority over chemical substances and mixtures should be exercised in such a manner as not to impede unduly or create unnecessary economic barriers to technological innovation while fulfilling the primary purpose of this chapter to assure that such innovation and commerce in such chemical substances and mixtures do not present an unreasonable risk of injury to health or the environment." *Id*. at § 2601(b)(3).

Section 6(a) provides the EPA with authority to regulate substances that present "an unreasonable risk of injury" to human health or the environment. 15 U.S.C. § 2605(a). Section 6(a) also lists examples of chemical lifecycle phases (*e.g.*, manufacturing, processing, usage, and disposal, etc.) which the EPA is authorized to regulate. *Id*. Moreover, Section 6(a) provides that "[i]f the [EPA] Administrator determines . . . that the . . . use . . . of a chemical substance presents an unreasonable risk of injury to health or the environment, the Administrator shall by rule" impose one or more authorized restrictions, which include limiting or banning the manufacture or distribution of the chemical for a particular use. *Id*.

Section 8(a)(1) provides that the EPA "shall promulgate rules" that require each person who manufactures or processes a chemical substance to submit a report as the "Administrator may reasonably require." 15 U.S.C. § 2607(a). The EPA is prohibited, however, by Section 8(a)(5)(A) from requiring reporting that is "unnecessary or duplicative" and must apply the reporting obligations under Section 8(a) only to those persons who are likely to have the relevant information. *Id*. at § 2607(a)(5)(A)–(C). In 2011, pursuant to its authority under Section 8(a)(1), the EPA promulgated the Chemical Data Reporting ("CDR") rule that required reporting for all

---

[2] All further section references shall refer to the Toxic Substance Control Act, unless otherwise specified.

2

chemicals[3] manufactured or imported at a site in the amount of 25,000 pounds or more in a given reporting year from 2012 onward. *See* 40 C.F.R. § 711.8(a)(1).

On June 22, 2016, Congress amended the TSCA with the Frank R. Lautenberg Chemical Safety for the 21st Century Act ("LCSA"). The amendment established a new integrated process under Section 6:

> The Administrator shall designate as a high-priority substance a chemical substance that the Administrator concludes . . . may present an unreasonable risk of injury to health or the environment because of a potential hazard and a potential route of exposure under the conditions of use, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant by the Administrator.

15 U.S.C. § 2605(b)(1)(B)(i).

Section 6(b)(2)(A) required the EPA to initiate risk evaluations on ten chemical substances within six months after the enactment of the LCSA. The EPA designated asbestos as one of the ten chemicals to undergo risk evaluation. *See* 81 Federal Register 91927 ("As amended, the law requires that risk evaluation be initiated on 10 chemical substances drawn from the 2014 update of the TSCA Work Plan for Chemical Assessments"). According to the EPA, that evaluation is ongoing. After 2016, "any chemical substance that is the subject of a rule proposed or promulgated under TSCA [Section 6]" is subject to a 2,500-pound volume threshold for reporting. 40 C.F.R. § 711.8(b).

Section 21 contains a citizen-petition process under which the public can seek to compel the EPA to engage in its rulemaking authority. 15 U.S.C. § 2620(a). If unsuccessful at the agency level, Section 21 enables the petitioner to file a civil action in federal district court for review of the EPA's determination. The standard of review at the district court is dependent on the relief sought in the Petition.

For petitions seeking the issuance of a new rule, Section 21(b)(4)(A) provides, "[i]f the Administrator denies a petition filed under this section . . . [,] the petitioner may commence a civil

---

[3] Chemical substances for which information must be reported are described as "[a]ny chemical substance that is in the Mastery Inventory File at the beginning of a submission period . . ." 40 C.F.R. § 711.5.

3

action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition." 15 U.S.C. § 2620(b)(4)(A). The standard of review for new-rule petitions is further prescribed by Section 21(b)(4)(B), which provides, "[i]n an action under subparagraph (A) respecting *a petition to initiate a proceeding to issue a rule* [], the petitioner shall be provided an opportunity to have such petition considered by the court in a *de novo* proceeding." (emphasis added).

Section 21 does not offer guidance as to the standard of review for petitions seeking the amendment or repeal of existing rules. However, case law analyzing Section 21's legislative history in this regard is instructive. In *Environmental Defense Fund v. Reilly*, the plaintiffs petitioned the EPA under Section 21 to promulgate rules to prevent the release of dioxins and furans into the environment. 909 F.2d 1497, 1449 (D.C. Cir. 1990). Specifically, they sought record-keeping and reporting requirements so they could monitor results. *Id*. The EPA denied the petition. *Id*. As with Plaintiffs here, the plaintiffs in *Reilly* then filed suit in district court seeking *de novo* review under Section 21—but they also sought concurrent relief under the APA. The district court granted the EPA's motion for summary judgment with respect to the APA claims reasoning that there was "an inherent illogic to [plaintiffs'] contention that a petition denial is simultaneously subject to both *de novo* and APA review . . . ." *Id*. at 1500. The plaintiffs appealed, but they settled the underlying Section 21 claim with the EPA that remained in the district court. *Id*. at 1500–01. Still, the D.C. Circuit decided the issue of "not whether APA review is available singly in lieu of Section 21 review, but whether [plaintiffs] are entitled to both." *Id*. at 1505.

The *Reilly* court ultimately held that "Congress did not intend to authorize simultaneous utilization of two remedies." *Id*. In so doing, the court went through an analysis of Section 21's legislative history to determine whether Congress intended to have two channels of judicial review. The court speculated that "[b]ut for the presence of Section 21, [plaintiffs] might have qualified for APA review of EPA's denial of their rulemaking petition by invoking the presumption of reviewability . . . ." *Id*. at 1505. In distinguishing Section 21 review and APA review, the court found that

4

> Less hospitable treatment of petitions to amend or repeal is warranted, then, since "the [agency] already will have addressed the general subject matter in an existing rule or order and [its] determination will have been subject to review under section 19 of th[e] Act." . . . the conferees do not intend that [EPA] be subjected to constant petitions challenging rules or orders for which adequate judicial review is provided under section 19. Therefore, if [EPA] denies a petition to amend or repeal an action under section 4, 5(e), 6, or 8, [Section 21] ***permits review of such denial only under the Administrative Procedure Act***.

*Id.* (quoting S.Rep. No. 94–1302, 94th Cong., 2d Sess. 98 (1976); H.R.Conf.Rep. No. 1679, 94th Cong., 2d Sess. 98 (1976), reprinted in [1976] U.S.Code Cong. & Admin.News 4583) (emphasis added) (alterations in original).

B.  Factual Background

On December 19, 2016, the EPA announced that asbestos would be one of ten chemicals selected for initial risk evaluations, as required by the LCSA. FAC ¶¶ 30, 31.

In May 2017, Plaintiffs notified the EPA that a company called Occidental Chemical Corporation failed to report its asbestos imports that totaled several hundred tons, which violated its obligations to the CDR. In response to Plaintiffs' notice, the EPA penned a letter to Occidental Chemical Corporation on July 28, 2017, informing it that asbestos imports were not subject to reporting because such reporting is not required for "naturally occurring chemical substances" under 40 C.F.R. section 711.6(a)(3). *Id.* ¶ 35. This letter led to Plaintiffs' petition.

C.  Procedural Background

Plaintiffs filed their Section 21 petition (the "Petition") with the EPA on September 25, 2018, requesting the EPA to initiate rulemaking under Section 8(a)(1) to expand the CDR reporting requirements to asbestos. *Id.* ¶ 36. Specifically, the Petition made the following requests that the EPA:

> (1) eliminate the asbestos exemption in the current rule and designate asbestos as a reportable substance, thereby triggering requiring reporting on importation and use of asbestos in the US,
>
> (2) lower the reporting threshold, eliminate exemptions for impurities and articles, and require reporting by processors in order to assure that EPA has the information on asbestos use and exposure necessary for its TSCA risk evaluation,

5

>     (3)     require immediate submission of reports on asbestos for the 2016 reporting cycle, thereby maximizing EPA's ability to use the information reported to conduct the ongoing asbestos risk evaluation and the subsequent risk management rulemaking under TSCA section 6(a), and
>
>     (4)     determine that reports submitted on asbestos are not subject to protection as confidential business information (CBI), enabling the public to submit informed comments on the asbestos risk evaluation and assuring full public awareness of asbestos uses and exposure that present a significant risk to health

*Id.* The EPA denied Plaintiffs' Petition on December 21, 2018. *Id.* at 42; 84 FR 3396-01, Asbestos; TSCA Section 21 Petition; Reasons for Agency Response ("Petition Denial"). The EPA's denial included the following grounds for rejection:

>     (1)     The asbestos loophole in the CDR rule "only applied under the specific circumstances described in the letter [to Occidental Chemical]. EPA did not find that the exemption applied for all 'manufacturers or importers of asbestos or asbestos-containing products' as claimed by petitioners." (Petition Denial at 17)
>
>     (2)     "EPA does not believe that the requested amendments would result in the reporting of any information that is not already known to EPA . . . . After more than a year of research and stakeholder outreach, EPA believes that the Agency is aware of all ongoing uses of asbestos and already has the information that EPA would receive if EPA were to amend the CDR requirements" (Petition Denial at 13)
>
>     (3)     "[A]mending the CDR rule would [not] be helpful in collecting additional import information on articles . . . [EPA] has sufficient information on imported articles containing asbestos to conduct the risk evaluation." (Petition Denial at 19)
>
>     (3) [sic] "[E]ven if EPA believed that the requested amendments would collect information on any new ongoing uses, EPA would not be able to finalize such amendments in time to inform the ongoing risk evaluation or, if needed, any subsequent risk management decision(s) . . ." (Petition Denial at 13–14)
>
>     (4)     With regard to the impurity exemption, the petitioners requested that these exemptions be made inapplicable to asbestos 'since the low levels of asbestos that have been found in makeup and crayons may be unintended contaminants that comprise byproducts and impurities' . . . [P]etitioners make no attempt to explain why they believe these findings are the result of the manufacture of asbestos as a byproduct or impurity . . . . Thus, it is unlikely that EPA would receive new information that would change its understanding of the conditions of use for asbestos that can be addressed under TSCA." (Petition Denial at 22)
>
>     (5)     "Petitioners' request [for disclosure of reported information

6

>containing CBI] is not appropriate for a TSCA section 21 petition . . . . EPA believes that disclosure of CBI would have no practical relevance to the risk evaluation or risk determination as the CBI claims are limited and EPA retains the ability to characterize the information without revealing the actual protected data." (Petition Denial at 25–26)

*Id*. at 43. On January 31, 2019, Plaintiffs requested for reconsideration, which included the following rebuttal:

> (1) EPA's efforts to avoid acknowledging the broad asbestos loophole in the CDR regulations are misleading and disingenuous.
>
> (2) EPA has greatly overstated its knowledge of asbestos use and exposure in the United States. In fact, there are critical gaps in EPA's understanding and expanded CDR information is essential for a credible asbestos risk evaluation.
>
> (3) Expeditious action by EPA would have enabled it to amend the CDR rule and obtain reports before completing the asbestos risk evaluation. Even after the evaluation is complete, CDR reporting would be valuable in TSCA section 6(a) rulemaking to restrict asbestos use and in informing the public about asbestos exposures.
>
> (4) Unintended contamination of consumer products with asbestos is a serious, well-documented concern that EPA is ignoring. Eliminating the reporting exemption for impurities would enable EPA to identify and address asbestos-contaminated products that it is now sweeping under the rug.
>
> (5) Instead of recognizing the importance of informing the public about asbestos exposure and risk, EPA is hiding behind legalisms and avoiding the public interest in a transparent risk evaluation and risk management rulemaking.

*Id*. ¶ 45. The FAC does not mention when (or if) the EPA denied their request for reconsideration.

Plaintiffs' operative pleading includes claims for relief under two statutes: (1) TSCA Section 21 provides a right to judicial review in an appropriate district court within 60 days following denial of a petition to initiate rulemaking (FAC ¶ 47); and (2) Section 706 of the APA allows a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. ¶ 54.

## II. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, "the party seeking to

invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). A Rule 12(b)(1) motion based on a lack of subject matter jurisdiction will be granted if the complaint, when considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 (9th Cir. 2003).

### III. DISCUSSION

A. Characterization of Plaintiffs' Section 21 Petition

The parties dispute the characterization of the Petition. Whether the Petition seeks an issuance of a new rule or an amendment/repeal of an existing rule is a threshold issue the Court must resolve before it can rule on the EPA's motion to dismiss. *Walker v. U.S. E.P.A.*, 802 F. Supp. 1568, 1574 (S.D. Tex. 1992) ("The type of review accorded the denial of a TSCA § 21 petition depends on whether the petition requests the issuance of a new rule or seeks the amendment or repeal of an existing rule."). This is because the legal basis of the claim and scope of review turns on whether the petition seeks to (1) initiate an EPA proceeding to issue a rule or (2) amend or repeal an existing rule.

During the oral argument herein, the EPA conceded that Section 21(b)(4)(B)'s *de novo* standard for the denial of a petition to issue a new rule is more advantageous for Plaintiffs. But after the hearing, the EPA filed a supplemental brief that, for the first time, took the position that what the Petition sought was an ***amendment*** to an existing rule—***not an issuance*** of a new rule— and this precluded *de novo* review. *See* Docket No. 37. The Court ordered supplemental briefing on this critical threshold point.

Plaintiffs argue their Petition was a request for issuance of a new rule because it "raises new issues and seeks new rule provisions, [and] there would be no administrative record to inform Section 21 review of the petition denial—a critical reason why Congress created a *de novo* proceeding for EPA refusals to issue a new rule." Docket No. 41 ("Plaintiffs' Supp. Brief") at 4. To support this, Plaintiffs contend the motivation for the Petition was recognition that the EPA's CDR rule did not require reporting on asbestos necessary to implement the 2016 TSCA amendments. Plaintiffs' position is that at the time the CDR rule was promulgated in 2011, the

8

"EPA did not address its application to asbestos and the rulemaking record is silent on whether asbestos would be subject to reporting." *Id*. at 5. Plaintiffs contend the Petition sought ***new*** reporting requirements based on the EPA's obligation to interpret the CDR rule under the LCSA, which requires it to evaluate asbestos. Plaintiffs conclude there is no administrative record for asbestos reporting requirements because the EPA only recently added asbestos to the risk-evaluations list. While the EPA represents it can certify an administrative record for review, there is none before the Court. Thus, Plaintiffs contend *de novo* review is the proper standard for review under Section 21(b)(4)(B).[4]

The EPA contends that the Petition expressly and functionally sought an amendment of the existing CDR rule, which thereby precludes *de novo* review. Docket No. 42 ("EPA's Supp. Brief"), at 2. The EPA argues Plaintiffs expressly requested an amendment on pages 2, 10, 11, and 12 of the Petition. *Id*. According to the EPA, it compiled and relied on material in its possession when it denied Plaintiffs' Petition. *Id*. at 4. This is so because the EPA is required, under the LCSA, to conduct a risk evaluation by December 2019 for the ten chemicals it identified, one of which is asbestos. *Id*. at 5. The EPA represents the risk evaluation is still ongoing, and "the risk evaluation docket provides an extensive course, specific to asbestos, that EPA considered and from which EPA could certify a record and upon which review in this matter should be based." *Id*. The EPA further points to past regulations to amend the CDR rule that issued in 1986, 2003, 2005, and 2011—all of which can also serve as a record for review of Plaintiffs' Petition. These prior amendments to the CDR rule "concern[] the range of chemicals and plant sites reporting, the type of data reported, the production volume reporting threshold, and other adjustments." It is not clear at this point whether they were relied on as a basis for the EPA's denial.

The EPA also argues that applying the *de novo* standard of review here would be at odds with the ongoing risk evaluation of asbestos required by Section 6(b). An ultimate determination

---

[4] Plaintiffs also point to *State of California et al v. Environmental Protection Agency et al,* Case No. 19-CV-3807, which was related to this matter. In that case, state attorneys general are seeking review of the denial of their petition with the EPA (which also sought the same asbestos reporting requirements as Plaintiffs herein) under *de novo **and*** APA review.

9

by the EPA that asbestos is not likely to present an unreasonable risk is considered a final agency action over which the U.S. Court of Appeals have exclusive jurisdiction under an APA standard of review. *See* 15 U.S.C. § 2618(a)(1)(A) ("not later than 60 days after the date on which a rule is promulgated under this subchapter . . . any person may file a petition for judicial review of such rule or order with the United States Court of Appeals for the District of Columbia Circuit or for the circuit in which such person resides or in which such person's principal place of business is located."). Given this, the EPA contends that the *de novo* review "would not serve Congress' purpose for providing separate procedures and standards depending on the nature of the petition, while also interfering with the statutory scheme governing risk determinations and judicial review of challenges to those determinations." *Id*. at 7–8. Here, the Petition seeks a more robust reporting requirement for asbestos to aid the unreasonable-risk determination. Plaintiffs' position is that, given the exemptions in the current CDR rule, the EPA is not conducting the risk determination with adequate reporting/information. The EPA's position is that it has enough information on asbestos to conduct its determination.

A copy of Plaintiffs' Petition came before the Court for the first time as an attachment to the EPA's supplemental briefing. *See* EPA's Supp. Brief, Ex. A. As the EPA points out, the Petition expressly requests the EPA to *amend* new reporting requirements into the existing CDR rule. Plaintiffs concede as much. *See* Plaintiffs' Supp. Brief at 6–7 ("While the petition proposed that the new reporting requirements on asbestos be housed in the CDR rule, this was a matter of administrative convenience, the requirements could as easily have been incorporated in a free-standing asbestos-specific rule under Section 8(a).").[5] Specifically, under the Petition's heading

---

[5] Plaintiffs request the Court to consider the related lawsuit in which state attorneys general have unsuccessfully sought similar asbestos-reporting requirements, but under a "new rule." While the Court expresses no conclusion, even the underlying petition in *State of California et al v. Environmental Protection Agency et al* seeks what appears to be an amendment and/or repeal of an existing rule, despite it requesting a "new rule." *See* Case No. 19-CV-3807, Docket No. 1, Ex. A ("the undersigned Attorneys General, on behalf of their respective states or district, respectfully request the Acting Administrator to grant this petition and initiate rulemaking under TSCA Section 8(a) to issue a new asbestos reporting rule to ensure that data as to the importation and use of asbestos and asbestos-containing products in the United States is adequately reported to EPA by: (i) eliminating the applicability of the "naturally occurring substance" exemption for asbestos reporting; (ii) applying reporting requirements to processors as well as to manufacturers of asbestos; (iii) eliminating the impurities exemption applicable to other chemical substances under

10

"CLOSING THE CDR LOOPHOLE: HOW THE RULE SHOULD BE AMENDED[,]" Plaintiffs request that the EPA:

(1) "amend 40 C.F.R. § 711(6)(a)(3) so that the exemption for naturally occurring chemical substances is inapplicable to asbestos"; under the current regulation, if the chemical, at the time of import, has only been processed by manual, mechanical, or gravitational means, by dissolution in water, by flotation, or by heating solely to remove water, it is then considered a naturally occurring chemical and is not subject to reporting. Plaintiffs believe this exemption results in risk determination with inaccurate/insufficient data.

(2) amend 40 C.F.C. § 711.22 to say "[f]or asbestos, the 2016 CDR submission period is from January 1, 2019 to April 31, 2019";

(3) amend the 40 C.F.R. § 711.8(b) reporting threshold for asbestos from 2,500 pounds to 10 pounds;

(4) amend 40 C.F.R. § 711.10(b)–(c) by removing its exemption for asbestos-containing articles and asbestos-contaminated consumer products; and

(5) amend 40 C.F.R. § 711.8 by adding a paragraph designating processors of asbestos and asbestos-containing articles as persons required to submit CDR reports. *See* Petition at 10–11.

Because Plaintiffs' Petition expressly requests the EPA to modify the CDR rule for stricter asbestos-reporting, by its terms, it does not fall under Section 21(b)(4)(B). Plaintiffs' requests are specifically directed at existing provisions of the CDR (*e.g.*, lowering minimum reporting threshold and eliminating naturally occurring substance exemption, etc.), and thus resembles a request for an amendment more than the initiation of a new rule. Therefore, a deferential standard applies.

Moreover, it appears an administrative record can be assembled. It would include the EPA's response to the Petition, which includes references to the asbestos risk evaluation docket on which it relied on in its decision. "In explaining its reasons for denying the petition, EPA cited the

the CDR; and (iv) requiring reporting with respect to articles that contain asbestos.").

problem formulation, among other documents, to explain how it identified the conditions of use for the asbestos risk evaluation. Both the Problem Formulation and the Scope Document, setting forth EPA's extensive research and outreach for identifying conditions of use, were subject to public notice and comment." EPA Supp. Brief at 5.

B. <u>Plaintiffs' Claim Under the Administrative Procedure Act</u>

Because Plaintiffs' Petition seeks an amendment to the existing CDR rule, APA review is appropriate, and *de novo* review under Section 21(b)(4)(B) does not apply. As stated above, in contrast to the detailed description of the *de novo* review available for denials of TSCA petitions to issue new rules under Section 21(b)(4)(B)(ii), TSCA Section 21 provides no express guidance of the scope of review available to denials of petitions to amend or repeal existing rules. *See Walker*, 802 F. Supp. at 1574. "Absent a statutory command to employ a particular standard of review for denials of petitions to amend or repeal existing rules, the review available is the arbitrary and capricious standard of review prescribed by the APA." *Id.* (citing 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–420 (1971); *American Paper Institute, Inc. v. American Electric Power Serv. Corp.*, 461 U.S. 402, 412–413 (1983). Accordingly, Plaintiffs' APA claim is properly before the Court because the Petition sought an amendment to the existing CDR rule.

Based on the forgoing, the EPA's motion to dismiss is **DENIED**. For the same reasons expressed above, Plaintiffs' Section 21 claim for *de novo* review cannot survive and is **DISMISSED with prejudice**.

This order disposes of Docket No. 16.

**IT IS SO ORDERED**.

Dated: November 15, 2019

_____
EDWARD M. CHEN
United States District Judge

12